## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF GEORGIA
## ATLANTA DIVISION

| | |
|---|---|
| ADAM WEINRAUB, on behalf of himself as representative of the beneficiaries of the Arthur N. Weinraub Trust, as next friend of Barbara Korman, and on behalf of all others similarly situated,<br><br>          Plaintiff,<br><br>v.<br><br>BANK OF AMERICA, N.A.,<br><br>          Defendant. | No. _____<br><br>**COMPLAINT – CLASS ACTION** |

## CLASS ACTION COMPLAINT

Plaintiff, Adam Weinraub ("Plaintiff"), brings this action on behalf of himself as representative of the beneficiaries of the Arthur N. Weinraub Trust, as next friend of Barbara Korman, and on behalf of and all others similarly situated against Defendant, Bank of America, N.A. ("BofA"), for its breach of its duties as professional trustee of a trust containing residential real property. In the course of administering the trust of which Plaintiff is a beneficiary, BofA has engaged in a practice of overcharging the trust by selecting unnecessary and/or excessively priced insurance for the property. A professional trustee owes fiduciary duties to the beneficiaries of a trust it administers, and BofA's practice violates those duties,

resulting in a breach of trust.

## **NATURE OF THE ACTION**

1.      This action is brought on behalf of a class of persons, defined below, who are beneficiaries of trusts that include residential real property among their assets (the "trust properties") and for which BofA acts as trustee.

2.      BofA, which has touted itself as one of the world's largest financial institutions, maintains a substantial business in managing trust assets.

3.      When BofA is appointed the trustee of a trust, it assumes a fiduciary duty to administer the trust for the benefit of the trust's beneficiaries, regardless of which state the trust was created in or out of which state BofA has administered it.

4.      As trustee, BofA manages the residential trust properties by, among other things, purchasing annual property insurance sold by third parties.

5.      BofA charges the cost of that property insurance to the trust, depleting the assets of the trust.

6.      The insurance products that BofA obtains for its residential trust properties are excessively expensive for the coverage provided for several reasons, including but not limited to the following:

> a. The dwelling coverage BofA secures for the trust properties is
> excessively expensive for the coverage provided compared to the

price of dwelling coverage for the same property that could have been purchased in the insurance market at the time; and/or

b. BofA secures an additional excess layer of liability insurance for the trust properties which is unnecessary and, therefore, comes at an unreasonable cost to the trust.

7. Plaintiff seeks to recover on behalf of the trust of which he is a beneficiary, and for the benefit of its beneficiaries, the unnecessary expenses the trust has sustained as a result of BofA's breach of trust in obtaining these excessive and exploitative insurance products. Plaintiff also seeks to recover on behalf of other similarly situated beneficiaries of trusts holding real property as to which BofA has engaged in similar conduct as trustee. Plaintiff also seeks injunctive relief to preclude this unfair practice going forward, plus recompense for the costs of this lawsuit, including reasonable attorney's fees.

8. The allegations of this Complaint are based upon the personal knowledge of Plaintiff as to the trust of which he is a beneficiary, and on information and belief as to all other matters through investigation of Plaintiff's counsel.

## **PARTIES**

### A. **Plaintiff**

9. Adam Weinraub, a citizen of the State of California, is a beneficiary of the "Arthur N. Weinraub Trust" (the "Weinraub Trust").

3

10.     Adam Weinraub also seeks to sue as next friend of Barbara Korman, a present, income beneficiary of the Weinraub Trust.  Ms. Korman lacks the capacity to represent her own interests in this matter.

11.     Adam Weinraub requests the Court's approval, pursuant to Federal Rule of Civil Procedure 17(c)(2), to represent Ms. Korman's interests along with those of the other beneficiaries of the Weinraub Trust.  Mr. Weinraub seeks this appointment with the consent of Ms. Korman's only surviving child, David Korman, because Mr. Weinraub has a substantially identical interest to Ms. Korman in the subject of this lawsuit and there is no conflict of interest between them with respect to it.

**B.     Defendant**

12.     BofA is a national banking association with its principal place of business in Charlotte, North Carolina.  As such, it is a citizen of the State of North Carolina.  It has locations in 40 states and territories in the United States.

## JURISDICTION AND VENUE

13.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. §1332(d)(2)(A), because the Class contains more than 100 persons, the aggregate amount in controversy exceeds $5,000,000, exclusive of interest and costs, and at least one member of the Class is a citizen of a state different from BofA.

14.     The Court also has subject matter jurisdiction over Plaintiff's individual

claims pursuant to 28 U.S.C. §1332(a) because the parties are citizens of different states and the amount in controversy, excluding fees and costs, exceeds $75,000.

15. BofA transacts substantial business in the United States, including in Georgia and this District, transacts business with members of the Class throughout the United States, including in Georgia and this District, and has substantial business contacts within the United States, including Georgia and this District.

16. The Court has personal jurisdiction over BofA under the Georgia Long Arm Statute because BofA is a nonresident of Georgia, OCGA § 9-10-90, and because Plaintiff's claims arise from BofA transacting business within Georgia, OCGA § 9-10-91(1), and committing a tortious act or omission within Georgia, OCGA § 9-10-91(2).

17. Venue is proper in this district under 28 U.S.C. § 1391(b)(2) and (d). At all times material, BofA has administered trusts, including the Weinraub Trust, in this District. BofA has, since 2004, operated its "regional center" for trust administration out of Atlanta, Georgia. In particular, since approximately September 1, 2004, BofA has administered the Weinraub Trust out of its offices in Atlanta, where all BofA trust officers responsible for the Weinraub Trust have been located, and from which all decisions about its administration have been made, including decisions about the purchase of insurance for the real property held in the Weinraub Trust. As such, a substantial part of the events or omissions giving rise to

Plaintiff's claim occurred, and continue to be carried out, in this District.  28 U.S.C. § 1391(b)(2).

## GENERAL ALLEGATIONS

### A.    Background on BofA's Trust Management Services

18.    BofA is "the largest provider of personal trust services in the country," managing over $128 billion in personal trust assets.  It offers trust and estate management through its Private Bank branch, which manages $607 billion in client balances.  The trusts and estates management practice constitutes approximately 21% of the Private Bank branch's business.

19.    At all times material, BofA has obtained some or all of its master trust insurance for residential properties held by trusts it administers from a third party, SES Insurance Brokerage Services, Inc., doing business as SES Risk Solutions ("SES").

20.    SES touts itself as a "consultative partner[] looking to make a difference for financial institutions and real estate investors through collaboration and innovative insurance solutions."  SES promises "unique [policy] wording for trust relationships and coverage that contemplates loss for situations that are often unique to trust property."

21.    SES operates as a middleman between financial institutions acting as property managers and trustees on the one hand, and insurance carriers on the other

hand, to offer, among other insurance products, a "Master Trust Program." SES's Master Trust Program is a "turnkey" insurance policy package written in the name of the financial institution (like BofA) which includes "Comprehensive coverage for all assets under one single policy, featuring: Property (up to $5 [million] per location), High per location liability limits, Personal property, Time element, Wind, Earthquake, Flood."

22.    When BofA purchases coverage for a trust property through a master trust insurance policy, it purchases coverage for all of the risks insured by the master policy.

23.    BofA professes to lack "control" over which coverages it purchases insurance for within a master trust insurance policy.

24.    Disregarding its duties as trustee and fiduciary, BofA purchased insurance products that are unnecessarily expensive, exploitative, and/or benefit BofA at the expense of trust beneficiaries.

25.    Nor does BofA offer trust beneficiaries the option of locating the same type of coverage for less money.

### B.    The Weinraub Trust

26.    The Weinraub Trust (the "Trust") was created pursuant to a trust agreement dated May 5, 1999, and made in Virginia.

27.    The "Grantor" and "Initial Trustee" of the Trust was Arthur N. Weinraub.

28.    The second amendment to the trust agreement, signed by Arthur Weinraub on February 28, 2001, named five beneficiaries of the trust: his then-fiancée, Barbara Korman, and his four children, one of whom is Plaintiff, Adam Weinraub.

29.    The "Trust Estate" consists of "[a]ll items of tangible personal property owned by Arthur Weinraub on the date this [Trust] agreement is signed by him."  A house located at 7692 Lemonwood Street, Boynton Beach, Florida (the "Trust Property") is among the trust assets.  Barbara Korman has, at all times material, resided in, and currently resides in, the Trust Property.

30.    The Trust originally named NationsBank, N.A. as a successor trustee, in the event Arthur Weinraub, the initial trustee, resigned, became incapacitated, or died.

31.    The second amendment to the Trust substituted Bank of America, N.A. for NationsBank, N.A. in the trust.

32.    Upon Arthur Weinraub's death in 2003, BofA assumed the role of successor trustee.  Pursuant to the terms of the trust agreement, BofA was co-trustee with Arthur Weinraub's sister, until 2011, when she died.  Since that time, BofA has served as the sole trustee of the Trust.

### C.    Factual Allegations Specific to the Weinraub Trust

33.    In its capacity as trustee of the Trust, BofA manages the Trust Property and has obtained insurance for it through SES.

34.    According to BofA, the replacement cost value of the house, as of March 2023, was approximately $465,562.  As of December 31, 2023, the trust corpus, including the Trust Property, was $716,291.28.

35.    The 2023 annual account statement for the Trust, which BofA has provided to its beneficiaries, is a 34-page document consisting of scores of line items in chronological order.

36.    Buried on page 17 of 34 are two entries for property insurance, listing payments for premiums to SES Insurance Brokerage Services on August 28, 2023. One entry says "-19,651" and the other "-92.76."

37.    Only upon Plaintiff's inquiry with BofA about these charges did BofA eventually send Plaintiff a document from SES showing the coverages included and insurance premiums for the Trust Property in 2023.  It showed the following:

| Property Deductible | Occupied | $1,000.00 | Vacant | $2,500.00 |
|---|---|---|---|---|

| Coverage | Amount of Insurance | Premium |
|---|---|---|
| Dwelling | $465,562 | $19,651.00 |
| Personal Property | $325,893 | Included |
| Loss of Use | $500,000 | Included |
| Liability | $2,000,000 | Included |
| Medical Payments | $10,000 | Included |
| Excess Liability | $25,000,000 | $92.76 |

| Total Premium | | $19,743.76 |
|---|---|---|

38.    The document does not disclose what portions of the $19,651 aggregate partial premium are attributable to the various "included" insurance coverages.

39.    The document further reflects that the valuation of the Trust Property is based on "replacement cost value."

40.    Each dollar of "Dwelling" coverage cost the Trust a little over 4.2 cents per dollar of insurance coverage: [($19,651 premium$/$465,562 coverage) = $.042].

41.    The secondary layer of $25 million of excess liability insurance (for an additional premium of $92.76) is unnecessary and, thus, excessive because the first layer of liability insurance included within the master policy ($2 million) is already more than the value of the Trust Property.

42.    On information and belief, BofA unnecessarily purchased the excess liability premium because it covers BofA's *own* potential liability associated with the Trust Property, yet BofA still charged this premium to the trust.

43.    One measure of the excessiveness of the base $19,651 premium for the Trust Property in 2023 is by comparison to the insurance premiums for a substantially similar property located just two doors down within the same development of nearly identical structures.

44.    The aerial photograph below depicts a red marker on the Trust Property (7692 Lemonwood Street) and a yellow marker on the comparator property two houses to the left (9757 Lemonwood Terrace):



45.    The insurance premium for the comparator property for 2023 was just $2,314.  Although its coverage varies from the policy that BofA purchased for the Trust Property in some respects that would lower premiums (for instance, the dwelling coverage was only $301,000), the math that matters is that—on a *dollar-for-dollar-of-coverage* basis—the premium for dwelling coverage for the comparator property is still orders of magnitude less expensive than what BofA charged the Trust for dwelling coverage, despite the Trust Property being located in the same geographic area and therefore subject to comparable risk.

46.     To be more precise, the coverage of the comparator property cost less than 8 tenths of a cent per dollar of coverage [($2,314 premium/$301,000 coverage) = $.0077]—making the insurance coverage that BofA selected for the Trust Property (4.2 cents per dollar of coverage) more than 5 times as expensive as the cost-per-dollar-of-coverage for the comparator property.

47.     The excessiveness of the cost of the insurance coverage BofA selected for the Trust Property may also be illustrated by comparison to the cost of other insurance available on the market.  For instance, the average premium per Total Insured Value ("TIV") in Palm Beach County, where the Trust Property is located, from Citizens Property Insurance Corporation, Florida's insurer of last resort, in 2023 was $10.20 per $1,000 of TIV.  Under the master trust policy that BofA selected for the Trust Property, however, the cost was $35.98 per $1,000 of TIV— about 3.5 times more expensive.

48.     The property insurance premiums BofA has charged the Trust in prior years were also excessive.

49.     On information and belief, the insurance for the Trust Property is due for renewal for the year 2025 on or about the end of August 2024, and BofA will be purchasing that insurance.

## CLASS ALLEGATIONS

50.     Pursuant to Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil

Procedure, Plaintiff brings this action on behalf of himself and the following Class

initially defined as follows:

> All beneficiaries of trusts in which BofA served or
> continues to serve as trustee in which it has, within the
> applicable statute of limitations (presuming the adequacy
> of the disclosure to beneficiaries contained in BofA's
> annual statements), charged the trust for insurance through
> a master trust insurance program for residential real
> property held by the trust.

51.     Excluded from the Class are BofA, its employees, officers, directors,

legal representatives, successors and wholly or partly owned subsidiaries or

affiliated companies, class counsel and their employees.   The Class likewise

excludes the judicial officers to whom this case is assigned, their immediate family

members and court staff assigned to this case.

## Ascertainability

52.     The Class can be readily identified using records in the possession,

custody, or control of Defendant BofA and non-parties like SES.

## Numerosity

53.     Because BofA is the self-professed "largest provider of personal trust

services in the country" through its Private Bank branch and that branch reportedly

gained more than 3,000 new clients in 2023 alone, the estimated number of members in the Class is well over 100 and is great enough that joinder is impracticable.

## Commonality and Predominance

54.    There are numerous questions of law and fact, the answers to which are common to the claims of Plaintiff and members of the Class, and those common questions predominate over any questions affecting only individual putative Class members.  Common questions include, but are not limited to, the following:

a.  Whether BofA violated its fiduciary duty as trustee and fiduciary by purchasing insurance for the residential trust properties it administers through a master trust insurance policy;

b.  Whether BofA owes the trusts it administers a fiduciary duty not to overcharge them for real property insurance premiums;

c.  Whether BofA exercised good faith or was judicious in purchasing real property insurance during the course of its administration of the trusts;

d.  Whether BofA failed to act according to its special skills or expertise or according to reasonable care, skill, and caution when it purchased master trust insurance policies for the residential trust properties it administers;

e.  Whether BofA holds itself out as an expert in trust administration;

f.  Whether BofA adequately investigated the cost of comparable insurance through vendors before purchasing insurance;

g.  Whether it is reasonable or beneficial to trusts for BofA to purchase, in addition to dwelling coverage, a secondary layer of excess liability insurance for a residential trust property held by a trust when the first layer of liability insurance already substantially exceeds the value of the trust;

h.  While Plaintiff does not challenge the total amount of dwelling coverage BofA selects for the residences it insures, its valuation of those real properties, the types of dwelling coverage it selects, or the individual rights of beneficiaries vis-à-vis one another, Plaintiff does challenge, and common questions include:

- Whether BofA, as one of the largest banks in the United States, has sufficient market power to obtain the insurance coverage it obtained through a master trust policy for no more than the average cost of comparable insurance per dollar of coverage available in the market in the relevant geographic area where it obtains coverage; and

- Whether the cost per dollar of insurance coverage that BofA has obtained through a master trust policy for residential

properties in trusts it administers exceeds the average cost per dollar of coverage available in the market within each such relevant geographic area; and

i.  The appropriate class-wide measure of damages or other monetary relief, which can be measured by the annual difference between (1) the cost of the premium for the insurance coverage BofA obtained through a master trust policy, and which BofA decided should be charged to each trust, and (2) the average cost per dollar of comparable coverage that was available in the market for a comparable property within the relevant geographic area as each trust property.

## **Typicality**

55.    Plaintiff's claims are typical of the claims of the Class, as Plaintiff and Class members alike are beneficiaries of trusts administered by BofA as trustee, and they were harmed in the same way by BofA's breach of trust—by having to pay unnecessary and/or excessive costs to insure the real property held by the trust.

56.    Choice-of-law issues will not present typicality concerns in treating this case as a class action.  Unless there is a material conflict of laws, there is no need to engage in a choice-of-law analysis, and there is no such conflict as to the substantive claim in this case—a claim for a trustee's breach of fiduciary duty—because:

a.  Like other fiduciary relationships, trustees have fiduciary duties of care, loyalty, and good faith;

b.  As a result, the trustee must manage the trust in a reasonable manner and avoid self-dealing;

c.  There is no state that does not impose these duties, and they are the only legal duties at issue in this case;

d.  Even if other substantive legal issues were to arise, they are very unlikely to present material conflicts among the states. *See, e.g.,* Eugene F. Scoles, *Choice of Law in Trusts: Uniform Trust Code, Sections 107 and 403*, 67 MO. L. REV. 213, 213 (2002) ("It is perhaps appropriate to start this Article on trusts and conflict of laws by noting that there are only minor differences in the law of trusts among the states of the United States.").

57.    Even if there were a material conflict of substantive law, Georgia chooses governing substantive law based on the *lex loci delicti* rule—the site of the wrongdoing—for tort claims.

58.    Under Georgia's choice-of-law rules, governing-law clauses do not dictate the law applicable to common-law tort claims (like the breach of trust claim in this case) unless the clause states that any and all claims arising out of the relationship between the parties shall be governed by the law of the designated state.

*Young v. W.S. Badcock Corp.*, 474 S.E.2d 87, 88 (Ga. Ct. App. 1996); *Green Leaf Nursery v. E.I. DuPont De Nemours & Co.*, 341 F.3d 1292, 1300–01 (11th Cir. 2003).

59.    With respect to the trustee's powers, the Weinraub Trust agreement provides:

> In addition to the powers granted by law, I grant my Trustee those powers set forth in Section 64.1-57 of the Code of Virginia, and I incorporate that Code Section in this agreement by this reference.  If any asset donated to this trust does not meet the requirements of the prudent investor standard set forth in Section 26-45.1 of such Code, my Trustee may nevertheless retain the asset for so long as my Trustee may deem appropriate, (specifically including my residence).
>
> \*    \*    \*    \*
>
> This agreement is made or delivered in Virginia and shall be governed by its laws.

60.    Since the Weinraub Trust does not expressly state that any and all claims arising out of the relationship between the parties shall be governed by Virginia law, Georgia's *lex loci delicti* rule applies to the claim in this case.

61.    When this case was previously pending before a federal district court sitting in Florida, where Plaintiff had initially filed it, BofA filed motions to dismiss asserting that the "alleged[] mismanage[ment of] the Trust with respect to the insurance coverage [BofA] selected" involved "decisions … made by B[ofA] in Georgia since 2004."

62.    In reliance on BofA's representations, Plaintiff voluntarily dismissed his case in Florida and refiled it in this District.

63.    Under Georgia's choice-of-law rules for common-law claims, under the *lex fori* rule, the laws of the forum state apply to all remedies and statutes of limitations; thus Georgia's statute of limitations governs the claims of Plaintiff and all class members.

64.    Plaintiff does not dispute that BofA's disclosures in its annual statements to trust beneficiaries are adequate to trigger the statute of limitations as to Plaintiff's claims and those of class members.

## Adequacy of Representation

65.    Plaintiff has both the standing and the capacity to seek the relief sought by this complaint. To the extent that Adam Weinraub needs to represent the interests of Barbara Korman in order to seek any particular form of relief for the benefit of the trust and Ms. Korman, he requests Court authorization to serve as her next friend or guardian ad litem for purposes of this litigation under Rule 17(c)(2).

66.    Plaintiff will fairly and adequately protect the interests of Class members and has retained counsel competent and experienced in class-action litigation. Plaintiff's interests are coincident with, and not antagonistic to, absent Class members' interests because, by proving his individual claims, he will necessarily prove BofA's liability to the Class. Plaintiff is also cognizant of, and

determined to, faithfully discharge his fiduciary duties to the absent Class members as the Class representative.

## Superiority

67.    A class action is superior to other available methods for the fair and efficient adjudication of this controversy.  The prosecution of separate actions by individual members of the Class would impose heavy burdens on the Court and BofA and would create a risk of inconsistent or varying adjudications of the questions of law and fact common to the Class.  Additionally, because the damages suffered by each individual Class member may be relatively small, the expense and burden of individual litigation would make it very difficult or impossible for individual Class members to redress the wrongs done to each of them individually, and the burden imposed on the judicial system would be enormous.  A multiplicity of individual actions would also likely increase the expense and time of litigation given the nature of the controversy presented in this Complaint.  A class action, on the other hand, provides the benefits of fewer management difficulties, single adjudication, economy of scale, and comprehensive supervision by a single court, and would result in reduced time, effort and expense for all parties and the Court, and ultimately, the uniformity of decisions.

## CLAIM FOR RELIEF

### (Breach of Trust)

68.     Plaintiff incorporates by reference the foregoing allegations of this Complaint and further alleges:

69.     BofA, as trustee, owes a fiduciary duty to the trusts it administers.

70.     BofA, as an expert trustee, owes a standard of care of a trustee with special skills or expertise.  Alternatively, BofA owes a standard of care of a prudent person exercising reasonable care, skill, and caution expected of a person dealing with his own property.

71.     The dwelling coverage that BofA purchases for the trust properties through a master trust policy is excessively expensive for the coverage provided compared to the average cost available on the market for comparable dwelling coverage for comparable properties.

72.     BofA's purchase of an excess layer of liability insurance coverage for trust properties that are already adequately covered by a primary layer of liability insurance through BofA's master trust insurance policy constitutes a breach of trust.

73.     Specifically, BofA's acts constituted a breach of trust in one or more ways, including but not limited to the following:

a)    Failing to ascertain the best possible price for the insurance products applicable to the residential trust properties for which it is responsible;

b)    Purchasing a generic, one-size-fits-all insurance policy for the residential trust properties it manages, through a master trust policy, that includes dwelling coverage that is excessively expensive compared to the average cost available on the market for comparable dwelling coverage for comparable properties;

c)    Purchasing excess liability coverage for the residential trust properties it administers, at an additional cost that is unnecessary to protect the interests of the trust and its beneficiaries;

d)    Failing to give beneficiaries the option not to purchase an excess layer of liability insurance; and/or

e)    Failing to give beneficiaries the option of locating less expensive comparable property insurance coverage for the trust property.

74.    BofA's above-alleged conduct has been ongoing for years; there is no reasonable basis to believe it will stop unless compelled to do so because of Plaintiff having filed this suit (and the one before it in federal court in Florida).

75.    Based on the foregoing, BofA's actions have caused and are likely to continue to cause substantial injury to beneficiaries.

76.    As a result of BofA's practices, Plaintiff and the Class members have been aggrieved and have suffered, and will suffer, actual damages or monetary injury resulting from the diminution of the value of the trusts of which they are beneficiaries.

77.    Plaintiff and the Class members are entitled to actual damages or restitution, punitive damages, and all other allowable relief, including the recovery of costs and reasonable attorneys' fees in pursuing these claims.

78.    Plaintiff and the Class members are entitled to injunctive relief to prevent BofA from engaging in the same practices with regard to BofA's purchase of insurance for residential trust properties in the future.

## **REQUESTED RELIEF**

WHEREFORE, Plaintiff individually, as representative of the beneficiaries of the Arthur N. Weinraub Trust and as next friend of Barbara Korman, and on behalf of all others similarly situated, requests the following relief:

a.    that the Court determine that this action may be maintained as a class action under Rules 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure, and direct that notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to members of the Class;

b.    certification of the proposed Class;

c.    appointment of the Plaintiff as representative of the Class;

d.    appointment of undersigned counsel as counsel for the Class;

e.    an order enjoining BofA, as provided by law, from engaging any further conduct in breach of trust set forth herein;

f.    an award to the Class of any monies paid pursuant to the alleged conduct set forth herein, all damages or monetary restitution recoverable under applicable law, including punitive damages, pre- and post-judgment interest, attorneys' fees and allowable costs; and

g.    an award of such other relief as the Court may deem just and proper.

Dated: August 26, 2024

Respectfully submitted,

Stephen F. Rosenthal
Florida Bar No. 0131458
Christina H. Martinez
Florida Bar No. 1029432
PODHURST ORSECK, P.A.
One S.E. 3rd Avenue
Suite 2300
Miami, Florida 33131
Tel.: (305) 358-2800
srosenthal@podhurst.com
cmartinez@podhurst.com

*/s/ G. Franklin Lemond, Jr.*
E. Adam Webb
Georgia Bar No. 743910
G. Franklin Lemond, Jr.
Georgia Bar No. 141315
WEBB, KLASE & LEMOND, LLC
1900 The Exchange, SE
Suite 480
Atlanta, Georgia 30339
Tel. (770) 444-9594
adam@webbllc.com
franklin@webbllc.com

*\* Pro hac vice forthcoming*

Mark Morrison
California Bar No. 152561
MORRISON + ASSOCIATES
548 Market Street, Unit 34835
San Francisco, CA 94914-5401
Tel.: (360) 440-0734
markamorrison@me.com

John G. Crabtree
Charles M. Auslander
Brian Tackenberg
CRABTREE & AUSLANDER, LLC
240 Crandon Boulevard
Suite 101
Key Biscayne, Florida 33149
Tel.: (305) 361-3770
jcrabtree@crabtreelaw.com
causlander@crabtreelaw.com
btackenberg@crabtreelaw.com
floridaservice@crabtreelaw.com

*\* Pro hac vice forthcoming*

*\* Pro hac vice forthcoming*

***Attorneys for Plaintiff***