IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF GEORGIA
ATLANTA DIVISION

ADAM WEINRAUB, on behalf of
himself and as representative of the
beneficiaries of the Arthur N. Weinraub
Trust, and as next friend of Barbara
Korman, and on behalf of all others
similarly situated,

     Plaintiff,

       v.

BANK OF AMERICA, N.A.,

     Defendant.

CIVIL ACTION FILE
NO. 1:24-CV-3780-TWT

## OPINION AND ORDER

This is a breach of trust action. It is before the Court on Plaintiff Adam
Weinraub's Motion for Determination of Capacity to Sue [Doc. 19] and
Defendant Bank of America, N.A.'s Motion to Dismiss [Doc. 28] and Motion to
Strike [Doc. 39]. For the reasons set forth below, Weinraub's Motion for
Determination of Capacity to Sue [Doc. 19] is GRANTED. Defendant Bank of
America's Motion to Dismiss [Doc. 28] is DENIED. Defendant Bank of
America's Motion to Strike [Doc. 39] is GRANTED in part and DENIED in
part.

## I.    Background[1]

This dispute concerns a trust created by Plaintiff Adam Weinraub's

---

[1] The Court accepts the facts as alleged in the Complaint as true for
purposes of the present Motion to Dismiss. *Wilding v. DNC Servs. Corp.*, 941

now-deceased father. (Compl. ¶ 27 [Doc. 1].) His father's then-fiancé, Barbara Korman, is the sole beneficiary of the trust, but any trust assets remaining upon her death are to be distributed to the Plaintiff and his siblings. (*Id.* ¶ 28; Br. in Supp. of Def.'s Mot. to Dismiss, Ex. 1 ("Trust Agreement"),[2] at 2 [Doc. 28-2].) In other words, Weinraub is a contingent remainder beneficiary. Among the trust's assets is a residential property (the "Property") in Boynton Beach, Florida. (Compl. ¶ 29.) Defendant Bank of America, N.A., is the sole trustee of the trust and manages the Property as a result. (*Id.* ¶ 32.)

Weinraub alleges that Bank of America breached its fiduciary duties as trustee by purchasing "excessively expensive" insurance coverage for the Property. (*Id.* ¶ 71.) He sues on behalf of himself as representative of the trust's beneficiaries, as next friend of Barbara Korman, and on behalf of a putative class of all other beneficiaries of trusts where Bank of America serves as trustee. In the motions presently before the Court, the parties contest whether Weinraub may maintain a suit for damages, whether he otherwise has standing to sue on behalf of Korman as next friend, and whether his class

---

F.3d 1116, 1122 (11th Cir. 2019).

[2] A copy of the Trust Agreement was first presented to the Court as an attachment to Bank of America's Motion to Dismiss. Courts ordinarily cannot consider a document outside the pleadings on a motion to dismiss. Fed. R. Civ. P. 12(d). However, the Eleventh Circuit has held that courts may do so if the document is "(1) central to the plaintiff's claims; and (2) undisputed, meaning that its authenticity is not challenged." *Johnson v. City of Atlanta*, 107 F.4th 1292, 1300 (11th Cir. 2024). Here, the Trust Agreement is obviously central to Weinraub's claims, and neither party disputes its authenticity.

allegations are appropriate.

## II.    Legal Standard

A complaint should be dismissed under Rule 12(b)(6) only where it appears that the facts alleged fail to state a "plausible" claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009); Fed. R. Civ. P. 12(b)(6). A complaint may survive a motion to dismiss for failure to state a claim, however, even if it is "improbable" that a plaintiff would be able to prove those facts; even if the possibility of recovery is extremely "remote and unlikely." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. *See Quality Foods de Centro Am., S.A. v. Latin Am. Agribusiness Dev. Corp.*, 711 F.2d 989, 994–95 (11th Cir. 1983); *see also Sanjuan v. Am. Bd. of Psychiatry & Neurology, Inc.*, 40 F.3d 247, 251 (7th Cir. 1994) (noting that, at the pleading stage, the plaintiff "receives the benefit of imagination"). Generally, notice pleading is all that is required for a valid complaint. *See Lombard's, Inc. v. Prince Mfg., Inc.*, 753 F.2d 974, 975 (11th Cir. 1985). Under notice pleading, the plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *See Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citing *Twombly*, 550 U.S. at 555).

A complaint should be dismissed under Rule 12(b)(1) only where the court lacks jurisdiction over the subject matter of the dispute. Fed. R. Civ. P. 12(b)(1). Attacks on subject matter jurisdiction come in two forms: "facial attacks" and "factual attacks." *Garcia v. Copenhaver, Bell & Assocs., M.D.'s, P.A.*, 104 F.3d 1256, 1260 (11th Cir. 1997). Facial attacks on the complaint "require the court merely to look and see if the plaintiff has sufficiently alleged a basis of subject matter jurisdiction, and the allegations in his complaint are taken as true for the purposes of the motion." *Id.* at 1261 (quotation marks, citation, and brackets omitted). On a facial attack, therefore, a plaintiff is afforded safeguards similar to those provided in opposing a Rule 12(b)(6) motion. *Williamson v. Tucker*, 645 F.2d 404, 412 (5th Cir. May 1981). "Factual attacks, on the other hand, challenge the existence of subject matter jurisdiction in fact, irrespective of the pleadings, and matters outside the pleadings, such as testimony and affidavits, are considered." *Garcia*, 104 F.3d at 1261 (quotation marks omitted). On a factual attack, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims." *Scarfo v. Ginsberg*, 175 F.3d 957, 960–61 (11th Cir. 1999) (quotation marks and citation omitted).

A complaint's class allegations may be struck under Rules 23(c)(1)(A) and 23(d)(1)(D). Rule 23(c)(1)(A) provides that courts "must" determine

whether to certify a class "at an early practicable time," Fed. R. Civ. P. 23(c)(1)(A), and Rule 23(d)(1)(D) provides that courts may "require that the pleadings be amended to eliminate allegations about representation of absent persons," Fed. R. Civ. P. 23(d)(1)(D). Courts typically determine whether to certify a class when the plaintiff files a motion for class certification following a period of discovery, but courts may also deny certification by striking a complaint's class allegations prior to such a motion. *Parker v. Perdue Foods, LLC*, 2024 WL 3993855, at *2 (M.D. Ga. Aug. 29, 2024). This situation is rare, however. *Id.* at *1, 3; *see also Carrier v. Ravi Zacharias Int'l Ministries, Inc.*, 2023 WL 2355891, at *2 (N.D. Ga. Mar. 3, 2023) (noting that striking a complaint's class allegations is an "extreme remedy," reserved only for "exceptional cases" (citation omitted)). As the Eleventh Circuit has explained, "the parties' pleadings are often not sufficient to establish whether class certification is proper," but "[i]n some instances, the propriety *vel non* of class certification can be gleaned from the face of the pleadings." *Mills v. Foremost Ins. Co.*, 511 F.3d 1300, 1309 (11th Cir. 2008); *see also Lawson v. Life of the S. Ins. Co.*, 286 F.R.D. 689, 695 (M.D. Ga. 2012) ("For a court to inquire into certification prior to discovery, 'the issues [must be] . . . plain enough from the pleadings to determine whether the interests of the absent parties are fairly encompassed within the named plaintiff's claim.'" (alterations in original) (citation omitted)).

To determine whether "it is clear from the face of the operative pleading that the case cannot be maintained as a class action," courts look to the traditional requirements of class certification. *Parker*, 2024 WL 3993855, at *2 (quoting *Jones v. Depuy Synthes Prods., Inc.*, 330 F.R.D. 298, 306 (N.D. Ala. 2018)). As an initial matter, a class cannot be certified unless at least one named plaintiff possesses Article III standing and the class is "adequately defined and clearly ascertainable." *Cherry v. Dometic Corp.*, 986 F.3d 1296, 1302 (11th Cir. 2021) (citation omitted); *Fox v. Ritz-Carlton Hotel Co.*, 977 F.3d 1039, 1046 (11th Cir. 2020) (citation omitted). If these requirements are met, courts must assess whether the four requirements of Rule 23(a) are also met:

(1) the class is so numerous that joinder of all members is impracticable;

(2) there are questions of law or fact common to the class;

(3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and

(4) the representative parties will fairly and adequately protect the interests of the class.

Fed. R. Civ. P. 23(a). Lastly, the proposed class must also satisfy at least one of the alternative requirements of Rule 23(b), which can be found in Rules 23(b)(2) and 23(b)(3) for our purposes. *See Herrera v. JFK Med. Ctr. Ltd. P'ship*, 648 F. App'x 930, 933 (11th Cir. 2016). A class can be certified under Rule 23(b)(2) if a defendant has "acted or refused to act on grounds that apply generally to the class, so that final injunctive relief or corresponding

6

declaratory relief is appropriate respecting the class as a whole." Fed. R. Civ. P. 23(b)(2). A class can be certified under Rule 23(b)(3) if "[1] the questions of law or fact common to class members predominate over any questions affecting only individual members, and . . . [2] a class action is superior to other available methods for fairly and efficiently adjudicating the controversy." Fed. R. Civ. P. 23(b)(3).

### III.    Discussion

### A.  Motions for Determination on Capacity to Sue & Motino to Dismiss

Weinraub has brought the present suit on behalf of (1) himself as a contingent remainder beneficiary and those similarly situated and (2) Barbara Korman as next friend. Prior to Bank of America's filing of its Motion to Dismiss, Weinraub preemptively filed his Motion for Determination on Capacity to Sue to establish that (1) he can seek damages on his own behalf as a contingent remainder beneficiary and (2) he otherwise has standing to sue on behalf of Barbara Korman—a vested beneficiary—as her next friend. Bank of America's Motion to Dismiss addresses the same topics. The Court begins its analysis below with the damages discussion.

Weinraub seeks both legal relief (actual and punitive damages) and equitable relief (restitution and injunctive relief) in this breach of trust action, (Compl. at 24.), but Bank of America disputes whether Weinraub—as a contingent remainder beneficiary—has a right to legal relief. The heart of this

dispute is a choice-of-law analysis. Bank of America asks this Court to apply Virginia law, whereas Weinraub asks this Court to apply Georgia law. Virginia law precludes contingent remainder beneficiaries such as Weinraub from maintaining an action at law and thus recovering damages as a form of legal relief.[3] *Ivey v. Lewis*, 133 Va. 122, 136 (1922) ("As a contingent remainderman has no vested interest in the property, he cannot maintain a common-law action to recover waste or damages in the nature of waste . . ."); *Keil v. Seth Corp.*, 2021 WL 5088242, at *8 (E.D. Va. Nov. 2, 2021) ("[A] contingent beneficiary may not seek legal relief such as damages . . ."). By contrast, Georgia law allows contingent remainder beneficiaries to recover damages. O.C.G.A. § 53-12-301(a) (granting "beneficiar[ies]" a cause of action to seek, among other remedies, damages in a breach of trust suit); *id.* § 53-12-2(2)

---

[3] In Virginia, a contingent remainder beneficiary may still seek equitable remedies for a breach of trust, including "compell[ing] the trustee to redress a breach of trust by paying money, restoring property, or other means" and "any other appropriate relief." Va. Code § 64.2-792; *id.* § 64.2-701 (defining a "beneficiary" as including persons with a "present or future, vested or contingent, beneficial interest in a trust"). In *Keil v. Seth Corp.*, 2021 WL 5088242 (E.D. Va. Nov. 2, 2021), a Virginia district court relied on the Virginia Trust Code to find that a plaintiff pleaded "a recoverable [equitable] remedy" when he sought damages payable to the trust. *Id.* at *8 (construing damages on behalf of a trust as equivalent to the equitable remedy of restitution); *see also Kositzka, Wicks & Co. ex rel. Curtis v. Fick*, 2025 WL 248318, at *7–8 (Va. Ct. App. Jan. 21, 2025) (finding that contingent remainder beneficiaries may seek damages on behalf of a trust, as part of the available equitable remedies under the Virginia Trust Code). Bank of America does not dispute that Weinraub states a claim for equitable relief under the Virginia Trust Code.

8

(defining "[b]eneficiary" as "includ[ing] any beneficiary, whether vested or contingent, born or unborn, ascertained or unascertained").

Bank of America argues that the choice-of-law provision in the Trust Agreement requires this Court to apply Virginia law to the breach of trust claim. The Trust Agreement contains the following choice-of-law provision: "This agreement is made or delivered in Virginia and shall be governed by its laws." (Trust Agreement, at 14.) It also defines Bank of America's trustee powers as those set forth by Virginia law. (*Id.* at 12 ("I grant my trustee those powers set forth in Section 64.1-57 of the Code of Virginia, and I incorporate that Code Section in this agreement by reference.").) According to Bank of America, the Georgia Trust Code directs courts to apply a trust agreement's chosen state law and that can include applying that chosen law to "*all* claims brought in a trust action." (*See* Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 4 [Doc. 38].) Bank of America relies specifically on O.C.G.A. § 53-12-5(1), which was enacted in 2010: "The meaning and effect of the trust provisions shall be determined by [t]he law of the jurisdiction designated in the trust instrument unless the effect of the designation is contrary to the public policy of the jurisdiction having the most significant relationship to the matter at issue." Where no choice-of-law provision exists, the Court applies the "law of the jurisdiction having the most significant relationship to the matter at issue." *Id.* § 53-12-5(2).

9

Weinraub asks this Court to apply the traditional *lex loci delicti* rule for tort claims, arguing that his claim for breach of fiduciary duty is a tort that is outside the scope of the Trust Agreement's generic choice-of-law provision. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 3–7 [Doc. 33].) According to Weinraub, O.C.G.A. § 53-12-5(1) instructs courts to interpret only the "meaning and effect" of trust provisions in accordance with the substantive law designated in the choice-of-law provision, but it does not instruct courts to apply that designated law to all claims that would arise under a trust action. Rather, the choice-of-law provision governs contractual claims and matters of contract interpretation. (Reply Br. in Supp. of Pl.'s Mot. for Determination of Capacity to Sue, at 3–4 [Doc. 35].) Because the parties do not dispute the meaning and effect of any of the trust provisions, Weinraub contends that O.C.G.A. § 53-12-5 is of no consequence. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 7.)

Ultimately, the Court holds that Georgia law applies and thus Weinraub may maintain his suit for damages as to his breach of fiduciary duty claim. The Court first turns to the choice-of-law fundamentals. Federal courts must apply state substantive law and federal procedural law. *Royalty Network, Inc. v. Harris*, 756 F.3d 1351, 1357 (11th Cir. 2014) (citation omitted). Whether Weinraub can bring an action for damages is a matter of substantive law. *See Browning v. Maytag Corp.*, 261 Ga. 20, 21 (1991); *see also Blasi v. Simonetti*,

2006 WL 8433686, at *2 (S.D. Fla. Oct. 4, 2006) ("In diversity actions, federal courts must look to the state law to discern the nature and extent of the right claimed included state rules regarding damages . . ."). To determine which state's substantive law applies, federal courts under diversity jurisdiction apply the choice-of-law rules of the state in which they sit. *Travelers Prop. Cas. Co. of Am. v. Moore*, 763 F.3d 1265, 1270 (11th Cir. 2014) (citations omitted). Accordingly, this Court applies Georgia's choice-of-law rules.

In Georgia, the traditional rule for contractual claims is that they are "governed by the law of the place where they were made," pursuant to the doctrine of *lex loci contractus*. *Nuvell Nat'l Auto Fin., LLC v. Monroe Guar. Ins. Co.*, 319 Ga. App. 400, 405 (2012) (citing *Convergys Corp. v. Keener*, 276 Ga. 808, 811 (2003)). By contrast, the traditional rule for tort claims is that they are "governed by the substantive law of the state where the tort was committed," pursuant to the doctrine of *lex loci delicti*. *Auld v. Forbes*, 309 Ga. 893, 894 (2020) (quoting *Bullard v. MRA Holding, LLC*, 292 Ga. 748, 750 (2013)) ("[F]or over 100 years, the state of Georgia has followed the doctrine of lex loci delicti in tort cases." (quoting *Bullard*, 292 Ga. at 750)). In addition to these defaults, Georgia generally allows parties to stipulate through contract which law will govern the contract and any claims arising under and related to it. *Garland v. Advanced Med. Fund, L.P. II*, 86 F. Supp. 2d 1195, 1203 (2000) (quoting *Manderson & Assocs., Inc., v. Gore*, 193 Ga. App. 723, 725 (1989))

11

(noting that such stipulations are enforced pursuant to certain exceptions (e.g., the law of the chosen jurisdiction cannot be contrary to Georgia public policy)). For trust agreements in particular, Georgia has codified its preference for enforcing choice-of-law provisions and, as mentioned above, provides for the following "most significant relationship" test in O.C.G.A. § 53-12-5:

> The meaning and effect of the trust provisions shall be determined by:
>
> > (1) The law of the jurisdiction designated in the trust instrument unless the effect of the designation is contrary to the public policy of the jurisdiction having the most significant relationship to the matter at issue; or
> >
> > (2) In the absence of an effective designation in the trust instrument, the law of the jurisdiction having the most significant relationship to the matter at issue.

Regardless of which state law controls a trust agreement's "meaning and effect," the wording of the choice-of-law clause still matters in determining the substantive claims to which the chosen law applies. If the choice-of-law provision is broad—e.g., stating that it applies to "any and all claims arising out of or related to the contract"—Georgia courts will extend the chosen law to both contractual and tort claims arising from the contract. *See Young v. W.S. Badcock Corp.*, 222 Ga. App. 218, 218 (1996); *Int'l Bus. Machs. Corps. v. Corning Optical Commc'ns, LLC*, 2019 WL 13233710, at *4–5 (N.D. Ga. Sept. 11, 2019). However, if the provision is "narrow"—e.g., stating that it is "governed" by a state's law—Georgia courts will not extend the chosen law to

tort claims that may arise from the contract. *Baxter v. Fairfield Fin. Servs., Inc.*, 307 Ga. App. 286, 292 (2010) (applying Georgia law to the tort of fraudulent representation since the contract's choice-of-law provision provided that the contract "be governed by and construed in accordance with" Florida law); *Rayle Tech, Inc. v. DEKALB Swine Breeders, Inc.*, 133 F.3d 1405, 1410 (11th Cir. 1998) (declining to apply an Illinois choice-of-law provision to tort claims since the provision stated that the contract "shall be governed by" Illinois law).

Here, the Trust Agreement's choice-of-law provision is a narrower one, which the Court construes as not reaching substantive tort claims such as Weinraub's breach of fiduciary duty claim. As mentioned above, the clause states: "This agreement is made or delivered in Virginia and shall be governed by its laws." (Trust Agreement, at 6.) Georgia courts have held that this generic "governed by" language extends only to contract-related claims and not to tort claims. *See Baxter*, 307 Ga. App. at 292; *Rayle Tech*, 133 F.3d at 1410. Weinraub's sole claim in this action is a tort claim. He alleges that Bank of America breached its fiduciary duties as trustee and styles his claim as a breach of trust as a result.[4] (Compl. ¶ 69–73, 3–7, 56.) A breach of fiduciary

---

[4] In Georgia, "[t]he trustee shall be accountable to the beneficiary for the trust property," and "[a] violation by the trustee of any duty that the trustee owes the beneficiary shall be a breach of trust." *Nalley v. Langdale*, 319 Ga. App. 354, 364 (2012) (quoting O.C.G.A. § 5-12-300).

duty is a tort. *Wachovia Bank of Ga., N.A. v. Namik*, 275 Ga. App. 229, 232 (2005) ("This Court has held unequivocally that an action for a breach of fiduciary duty lies in tort."); *Wimpy v. Martin*, 356 Ga. App. 55, 57 (2020) (acknowledging a breach of fiduciary duty as a tort claim); *King v. King*, 316 Ga. 354, 355 (2023) (same); *see also Garland*, 86 F. Supp. 2d at 1204–05 (applying *lex loci delicti* to all tort claims in the case, including a breach of fiduciary duty claim). Accordingly, the Court must turn to the traditional rule of *lex loci delicti* for Weinraub's breach of fiduciary duty claim. *See Rayle Tech*, 133 F.3d at 1410 (applying *lex loci delicti* because the plaintiff's claim sounded in tort, alleging that the defendant "breach[ed] [a] duty imposed by law and not merely [one] . . . imposed by the contract itself").

Applying *lex loci delicti*, the Court holds that Georgia substantive law governs this breach of fiduciary duty claim. The "state where the tort was committed" is "the place where the injury sustained was suffered" or "the place where the last event necessary to make an actor liable for an alleged tort takes place." *Bullard*, 292 Ga. at 750–51 (citation omitted). Here, the tort was committed in Georgia because the injury was to the trust corpus, which was administered by Bank of America in Georgia. (*See* Br. in Supp. of Pl.'s Mot. for Determination on Capacity to Sue, at 12–13 [Doc. 19] (quoting *Clark v. Baker*, 186 Ga. 65, 77 (1938)).) Bank of America does not dispute that Georgia law would apply under *lex loci delicti*.

14

O.C.G.A. § 53-12-5(1) does not change this calculus. According to Bank of America, "courts interpreting § 53-12-5 have applied it to *all* claims in a trust action, not just questions of construction and interpretation," and now Bank of America asks this Court to do the same with Weinraub's claim. (*See* Reply Br. in Supp. of Def.'s Mot. to Dismiss, at 5.) The Court reads that section of the Georgia Trust Code more narrowly. In the Court's view, O.C.G.A. § 53-12-5(1) does not require Georgia courts to apply the law designated in a trust agreement's choice-of-law provision to *all* claims—whether in contract or tort— brought in a trust action. *See Int'l Bus. Machs.*, 2019 WL 13233710, at *4–5 ("[N]o Georgia case has ever held that a choice-of-law provision will bring in the entire body of law of the chosen state. Instead, in Georgia, a choice of law provision simply allows the contracting parties to choose the law of the state to govern their contractual rights and duties." (citation omitted)). Rather, it requires Georgia courts to construe the "meaning and effect" of the clauses in a trust agreement according to the law designated in the choice-of-law provision.[5] The "meaning and effect" of a trust agreement clearly includes such matters as contract construction, validity, and interpretation,[6] but it would

---

[5] Of course, this assumes that the chosen law is not "contrary to public policy of the jurisdiction having the most significant relationship." O.C.G.A. § 53-12-5(1).

[6] Other than the scope of the choice-of-law provision, the parties do not dispute the meaning or effect of any of the clauses in the Trust Agreement. Here, the Court applies Georgia law to determine the scope of the choice-of-law clause. Both Georgia and Virginia courts, as well as a majority of courts across

not appear to include tort claims arising from the agreement unless the choice-of-law clause expressly says so. The Court must apply Georgia rather than Virginia law to Weinraub's tort claim, notwithstanding the fact that the Trust Agreement incorporates Virginia law in defining Bank of America's trustee powers.

Bank of America cites four cases to argue that O.C.G.A. § 53-12-5 requires the Court to apply Virginia law to Weinraub's breach of trust claim, but the Court finds those cases unpersuasive. In *Morris v. Morris*, 326 Ga. App. 378 (2014), a Georgia appellate court applied O.C.G.A. § 53-12-5 to a declaratory judgment action regarding the correct distribution of a trust's assets, which pertains to contract interpretation rather than torts arising under the contract. *Id.* at 381 (reversing a lower court decision that distributed trust assets according to North Carolina law rather than Georgia law, as the trust agreement included a Georgia choice-of-law provision). In *In re Dorsey*, 497 B.R. 374 (Bankr. N.D. Ga. 2013), a bankruptcy district court in Georgia

---

the country, appear to agree that determining the scope of a choice-of-law clause—like its validity—is a threshold issue to be determined by applying the forum law rather than the chosen law. *See Pyott-Boone Elecs. Inc. v. IRR Tr. for Donald L. Fetterolf Dated Dec. 9, 1997*, 918 F. Supp. 2d 532, 542–43 (W.D. Va. 2013) ("The Eighth Circuit provided perhaps the best justification for this result . . . conclud[ing] that interpreting the scope of a choice-of-law provision under the chosen law rather than the forum law 'would basically give effect to that provision *before* the court's analytical determination of what effect it should have." (citation omitted)); *Rayle Tech*, 133 F.3d 1405 (applying Georgia's choice-of-law rules in determining the scope of a choice-of-law clause).

applied a choice-of-law provision pursuant to O.C.G.A. § 53-12-5 and found that a trust agreement's "spendthrift" clause was enforceable under the chosen law; there, the O.C.G.A. § 53-12-5 analysis was limited to the validity of a trust provision. Lastly, Bank of America cites two unpublished opinions by this Court: *Lee v. Lee (Lee I)*, 2016 WL 5373859 (N.D. Ga. Sept. 26, 2016), and *Lee v. Lee (Lee II)*, 2019 WL 5458006 (N.D. Ga. Mar. 19, 2019). In *Lee I* and *Lee II*, the Court applied Georgia law to all claims in the suit pursuant to O.C.G.A. § 53-12-5, including to the plaintiff's tort claims for breach of legal duties and conversion. *Lee I*, 2016 WL 5373859, at *2; *Lee II*, 2019 WL 5458006, at *2. The Court reasoned that Georgia law controlled all claims because the trust agreement did not include a choice-of-law clause regarding its "meaning and effect" and Georgia had the "most significant relationship" given that most of the real property in question was located in Georgia. *Lee I*, 2016 WL 5373859, at *2; *Lee II*, 2019 WL 5458006, at *2. The Court is comfortable departing from the *Lee* cases, as the parties there did not contest the application of Georgia law and the Court had no occasion to closely scrutinize O.C.G.A. § 53-12-5.

Because Georgia law governs the breach of trust action, Weinraub may rightfully maintain a claim for damages. Therefore, the Court grants Weinraub's Motion for Determination of Capacity to Sue and denies Bank of America's Motion to Dismiss for failure to state a claim for damages. Having found that Weinraub has capacity to seek all relief requested in the Complaint

17

and finding no reason why Weinraub otherwise lacks standing as an individual under Article III, [7] the Court declines to reach the question of whether Weinraub additionally has standing as next friend to Barbara Korman. (*See* Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Dismiss, at 2 ("Plaintiff has his *own* claim for damages on behalf of the Trust against BofA. That legal conclusion renders the next-friend inquiry moot.").)

## B. Motion to Strike

Bank of America moves to strike the Complaint's class allegations, arguing that it is impossible for Weinraub to satisfy Rule 23's predominance, typicality, or adequacy requirements. The Complaint proposes a class of "[a]ll beneficiaries of trusts in which [Bank of America] served or continues to serve as trustee in which it has, within the applicable statute of limitations . . . charged the trust for insurance through a master trust insurance program for residential real property held by the trust." (Compl. ¶ 50.) According to Bank of America, individual issues would predominate because the Court would need to conduct individualized assessments of each trust's choice of law (including whether a provision exists and in what form), beneficiaries, available remedies, and applicable statutes of limitations. (Br. in Supp. of Def.'s Mot. to Strike, at

---

[7] Besides its damages argument, Bank of America does not present any arguments as to why Weinraub lacks individual standing. (*See* Br. in Supp. of Def.'s Mot. to Dismiss, at 20 n.5.) And the Court concludes that Weinraub satisfies Article III's standing requirements, as he seeks a redressable injury-in-fact that he alleges Bank of America caused.

9–21 [Doc. 39].) Moreover, Bank of America contends that Weinraub is not a typical or adequate representative of the class because he is a contingent remainder beneficiary, putting him in a unique position that conflicts with the interests of vested class members. (*Id.* at 21–24.)

In response, Weinraub argues that the Motion is "premature" and "extreme" given that discovery has not occurred. (Pl.'s Resp. Br. in Opp'n to Def.'s Mot. to Strike, at 1 [Doc. 39].) He then responds to each of Bank of America's arguments regarding choice of law, beneficiaries, remedies, and statutes of limitations. Regarding choice of law, Weinraub contends that Bank of America has not provided evidence showing that the trust agreements of the putative class would include varying or difficult choice-of-law provisions, or any choice-of-law provisions at all. (*Id.* at 4–5.) Regardless, Weinraub asserts that Georgia law will govern the breach of trust claim for each putative class member since Bank of America's alleged financial harm in each case would occur in Georgia under *lex loci delicti*. (*Id.* at 5–6.) And, even if a Bank of America branch in a state other than Georgia caused the harm, Weinraub contends that he could simply "tailor the class definition through amendment"—supposedly to limit the putative class to harms perpetrated in Georgia—and that each state's breach-of-fiduciary-duty laws are otherwise uniform in all material respects. (*Id.* at 6–12.) Regarding beneficiaries and remedies, Weinraub argues that the Court has no occasion to identify each on

19

an individual basis because putative class members seek relief on behalf of each trust rather than on behalf of themselves as individuals. (*Id.* at 12–15.) Regarding statutes of limitations, Weinraub responds that the issue is procedural such that Georgia's statute of limitations will always apply. (*Id.* at 15–18.) Lastly, Weinraub argues that he is an adequate and typical class representative because he seeks to remedy the same fundamental harm as all putative class members, regardless of any minor differences that Bank of America raises. (*Id.* at 18–25.)

### 1. Rule 23(b)(3) Class

To certify a Rule 23(b)(3) class, a plaintiff must not only meet the requirements of Rule 23(a) but also show that "questions of law or fact common to class members predominate over any questions affecting only individual members" and that "a class action is superior to other available methods for fairly and efficiently adjudicating the controversy," Fed. R. Civ. P. 23(b)(3). "Common questions 'predominate' . . . when the substance and quantity of evidence necessary to prove the class claims won't vary significantly from one plaintiff to another." *Tershakovec v. Ford Motor Co.*, 79 F.4th 1299, 1306 (11th Cir. 2023). Common questions "will not predominate . . . if as a practical matter, the resolution of an overarching common [question] breaks down into an unmanageable variety of individual legal and factual issues." *Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1191 (11th Cir. 2009) (citation modified)

(quoting *Andrews v. Am. Tel. & Tel. Co.*, 95 F.3d 1014, 1023 (11th Cir. 1996), *abrogated on other grounds by*, *Douglas Asphalt Co. v. QORE, Inc.*, 657 F.3d 1146 (11th Cir. 2011)). "The predominance inquiry requires an examination of the claims, defenses, relevant facts, and applicable substantive law to assess the degree to which resolution of the classwide issues will further each individual class member's claim against the defendant." *Babineau*, 576 F.3d at 1191 (citation modified) (quotation marks and punctuation omitted).

Given the nature of Weinraub's class allegations, it is apparent from the face of the Complaint that individualized issues predominate and that no amount of discovery would change this conclusion. It is sufficient to note that the Court would need to go through the complicated process of determining whether each trust agreement contains a choice-of-law provision and, if so, the form that each provision takes. There appears to be no way around this individualized process. Weinraub's argument that Bank of America has not provided evidence that the trust agreements in the class would contain varying choice-of-law provisions is unconvincing; the choice-of-law provisions across the class will obviously and inevitably vary, and likely to a wide degree. Moreover, Weinraub's proposed class supposedly will include trust assets administered by Bank of America branches in states other than Georgia, further individualizing the choice-of-law analysis required for each trust agreement. Weinraub's contention that he could simply amend the class

definition to fix this problem is of no moment; he may move to amend following this Order if he desires. The Court therefore grants Bank of America's Motion to Strike the class allegations as to the proposed Rule 23(b)(3) class.

### 2. Rule 23(b)(2) Class

To certify a Rule 23(b)(2) class, a plaintiff must not only meet the requirements of Rule 23(a) but must also show that the defendant has "acted or refused to act on grounds that apply generally to the class" such that "final injunctive relief . . . is appropriate respecting the class as a whole," Fed. R. Civ. P. 23(b)(2). The parties do not appear to discuss the Rule 23(b)(2) requirements at all, instead focusing on Rule 23(a)'s typicality and adequacy requirement and Rule 23(b)(3). Bank of America argues that Weinraub does not plead a typical injury and cannot be an adequate representative because (1) his status as a contingent beneficiary creates "an inherent conflict of interest among the putative class members"; (2) his inability to seek legal damages puts him in different shoes than putative class members who can seek damages; and (3) his attempt to bring claims as next friend of Barbara Korman means he will raise defenses unique to him. (Def.'s Mot. to Strike, at 21–23.) At this stage (and having already rendered moot Bank of America's second and third arguments), the Court declines to strike the proposed Rule 23(b)(2) class for failure to satisfy Rule 23(a)'s typicality and adequacy requirements.

22

### IV.    Conclusion

For the foregoing reasons, Weinraub's Motion for Determination of Capacity to Sue [Doc. 19] is GRANTED, and Defendant Bank of America's Motion to Dismiss [Doc. 28] is DENIED. Defendant Bank of America's Motion to Strike [Doc. 39] is GRANTED in part and DENIED in part. The class allegations of the Complaint regarding the Rule 23(b)(3) proposed class are STRICKEN.

SO ORDERED, this   7th   day of August, 2025.

THOMAS W. THRASH, JR.
United States District Judge

23